In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1865

DANIEL PERNICE,

Plaintiff-Appellant,

v.

CITY OF CHICAGO,

Defendant-Appellee.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4441--Harry D. Leinenweber, Judge.


Argued December 5, 2000--Decided January 11, 2001


   Before POSNER, EASTERBROOK, and EVANS, Circuit
Judges.

   Evans, Circuit Judge.  On August 27, 1998, Daniel
Pernice's 20-year career with the City of
Chicago's Department of Aviation came to an
unceremonious conclusion. He promptly filed this
lawsuit, alleging that by firing him the City
violated the Americans with Disabilities Act, 42
U.S.C. sec. 12101 et seq. Pernice now asks us to
reverse the district court's dismissal of his
second amended complaint.

   Pernice's troubles began--or, more accurately,
were discovered by the City--on March 2, 1998,
when he was arrested and charged with disorderly
conduct and possession of cocaine. Although
Pernice was never convicted on these charges, he
voluntarily sought treatment for his "self-
acknowledged drug addiction." After completing a
one-week inpatient program at a drug
rehabilitation center in early June 1998, Pernice
continued treatment on an outpatient basis. On
June 25 Pernice requested medical leave from the
City "for the purpose of dealing with his 'drug
dependency,'" and the following day submitted a
letter to his superiors from his doctor,
explaining his need for treatment. Pernice
alleges that he has been drug-free ever since and
that he continues to attend Alcoholics Anonymous
and Narcotics Anonymous meetings.

Even though Pernice was arrested while off duty, the City took an interest in his conduct. He was charged with various violations of City personnel rules stemming from his arrest and was terminated on August 27. After a hearing, the City of Chicago Personnel Board upheld the termination, finding that Pernice had purchased cocaine at a bar and had become involved in an altercation with Chicago police officers. The personnel board also specifically found that Pernice had been discharged for possession of a controlled substance.

Pernice then brought this action. The first amended complaint stated he was "allegedly terminated" for violations of City personnel rules prohibiting the possession of controlled substances, violations of the Chicago Municipal Code, and conduct unbecoming a public employee. The City moved to dismiss, arguing that Pernice failed to plead that he suffered from an ADA-covered disability, and that he had pled himself out of court by alleging he was discharged because of his conduct, not because of any alleged disability. Pernice's memorandum in opposition to the City's motion took the position that his possession of drugs was "an integral part" of his disability--drug addiction--because he could not be afflicted with that alleged disability without necessarily possessing drugs.

The district court rejected Pernice's argument, holding that, according to the first amended complaint, the City terminated Pernice for drug possession, not because of any alleged disability. Pernice pled himself out of court, the district court held, because the ADA permits employers to discipline disabled employees for violations of rules that apply to all employees, even if the violation of the rule is related to a disability. The district court did, however, permit Pernice to amend his complaint. He did so only by adding the allegations that his "drug addiction created a wholly involuntary need to possess drugs," and that "[s]aid compulsion resulted in his termination by the Defendant." The court dismissed this second amended complaint without further comment, and this appeal followed.

Pernice does not seriously dispute that the City could have fired him for his drug use without running afoul of the ADA. It is well-established that an employee can be terminated for violations of valid work rules that apply to all employees, even if the employee's violations occurred under the influence of a disability. E.g., Palmer v. Circuit Court of Cook County, Ill., 117 F.3d 351, 352 (7th Cir. 1997) (upholding termination of employee whose threats

against co-workers were triggered by mental illness). This rule is particularly applicable to employees who violate rules relating to drug or alcohol abuse; indeed, the ADA contains a specific provision stating that employers may hold alcoholics and drug users "to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee." 42 U.S.C. sec. 12114(c)(4)./1 For example, in Martin v. Barnesville Exempted Village School District Board of Education, 209 F.3d 931 (6th Cir.), cert. denied, 121 S. Ct. 482 (2000), the Sixth Circuit affirmed summary judgment in favor of a school board which refused to promote the plaintiff, an alcoholic, to a bus driver position because of his earlier violation of a rule forbidding the consumption of alcohol while on duty. Although the ADA might protect a plaintiff from adverse employment action taken because of his alcoholism or drug addiction, it provides no bar to discipline for employee misconduct. Id. at 935. See also Salley v. Circuit City Stores, Inc., 160 F.3d 977, 981 (3d Cir. 1998) (affirming summary judgment for ADA defendant which terminated drug addict employee who reported to work under the influence of drugs); Williams v. Widnall, 79 F.3d 1003, 1007 (10th Cir. 1996) (affirming summary judgment for Rehabilitation Act defendant which terminated alcoholic employee who threatened his supervisor and co-workers); Collings v. Longview Fibre Co., 63 F.3d 828, 832-33 (9th Cir. 1995) (affirming summary judgment for ADA defendant which terminated drug addict employees who admitted buying, selling, and using drugs at work); Maddox v. University of Tennessee, 62 F.3d 843, 847-48 (6th Cir. 1995) (affirming summary judgment for ADA and Rehabilitation Act defendant which terminated alcoholic employee after his arrest for drunk driving and public intoxication)./2 A contrary rule would "require an employer to accept egregious behavior by an alcoholic [or drug addict] employee when that same behavior, exhibited by a nondisabled employee, would require termination." Williams, 79 F.3d at 1007.

Although the reasons for an employer's decision to take an adverse job action against an employee are often questions of fact, courts have resolved cases like this one at the pleading stage. In Newland v. Dalton, 81 F.3d 904 (9th Cir. 1996), for example, a civilian employee of the Navy was terminated after he attempted to discharge an assault rifle in a tavern. The Ninth Circuit affirmed the dismissal of his Rehabilitation Act claim, even though the complaint alleged that the "drunken rampage" was the direct result of his

alcoholism, because other facts in the complaint demonstrated that he was fired for his misconduct. Id. at 906. See also Little v. F.B.I., 1 F.3d 255, 259 (4th Cir. 1993) (affirming dismissal of alcoholic plaintiff's Rehabilitation Act claim when complaint indicated he was terminated for being intoxicated while on duty). Pernice's second amended complaint suffers from the same deficiency: it all but directly alleges he was terminated for his criminal misconduct, not because of a "disability."

Pernice attempts to finesse this problem by arguing that the misconduct at issue, drug possession, cannot be separated from his alleged disability of drug addiction because his "drug addiction created a wholly involuntary need to possess drugs." This argument apparently is based upon Despears v. Milwaukee County, 63 F.3d 635 (7th Cir. 1995), in which we held that an employer did not violate the ADA when it demoted a worker from a job involving driving after the worker received his fourth drunk driving citation and lost his driver's license. The worker argued that his alleged disability of alcoholism caused him to lose his license, and we agreed. Id. at 636. But a cause is different from a compulsion, and because the plaintiff made an independent decision to drive while intoxicated, he had failed to establish the necessary nexus between his alcoholism and the demotion. Id./3 Pernice essentially argues that his drug addiction compelled him to possess drugs, and therefore any employment action taken to address this criminal misconduct necessarily implicates his alleged disability.

Although we regard Pernice's factual allegations as true for purposes of the City's motion to dismiss, see Fredrick v. Simmons Airlines, Inc., 144 F.3d 500, 502 (7th Cir. 1998), his artful pleading cannot remove us entirely from reality. As the Supreme Court has noted, "even among many who consider alcoholism a 'disease' to which its victims are genetically predisposed, the consumption of alcohol is not regarded as wholly involuntary." Traynor v. Turnage, 485 U.S. 535, 550 (1988). This observation is equally true of drug addiction. Moreover, many criminal laws proscribing drug possession might be subject to constitutional challenge if the act of possessing drugs were truly involuntary. See Despears, 63 F.3d at 636-37. In short, Pernice is not like a driver who without warning experiences an epileptic seizure which causes him to veer onto the sidewalk and strike a pedestrian. Whether or not his alleged disability of drug addiction created a wholly involuntary need to possess drugs, Pernice made a conscious choice to actually possess drugs. We therefore have little trouble separating his misconduct from his

alleged disability. The City may punish Pernice for the former without violating any legal protections he may possess because of the latter.

In a last-ditch effort to revive his claim, Pernice contends he never meant to allege that his termination was prompted by his drug arrest, but rather the triggering event was his decision to seek treatment for his addiction. In support of this novel interpretation of the second amended complaint, Pernice points out that it states he was "allegedly terminated"/4 for drug possession, implying that drug possession was merely a pretext. In addition, Pernice argues that the timing of his dismissal--5 months after his drug arrest, but only 1 months after he requested medical leave to deal with his addiction--is consistent with the theory that he was terminated only for seeking treatment.

We generally are inclined to permit plaintiffs to hypothesize a new theory on appeal as long as it can be reconciled with the written complaint. E.g., Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 439-40 (7th Cir. 1994). On the other hand, a plaintiff may not respond to the dismissal of his complaint by arguing "a case that was not before the district court." Thomason v. Nachtrieb, 888 F.2d 1202, 1205 (7th Cir. 1989). Under this framework, Pernice's new theory proves too much. For one thing, the policy he apparently ascribes to the City--that it retains current drug users on its payroll, but terminates drug users who seek treatment--is ludicrous. Moreover, Pernice's arguments before the district court make clear he never intended that his second amended complaint be read the way he asks us to read it. For example, Pernice's brief opposing the City's motion to dismiss plainly admits that "[i]n August, 1998, the City fired Mr. Pernice for violating personnel rules, stemming from his March arrest." In addition, Pernice argued, as he does on appeal, that his termination was related to his alleged disability because drug addiction is inextricably linked to possession of drugs. This argument is necessary only because Pernice agreed (and agrees) that he was terminated for drug possession, not for seeking treatment for his addiction. Clearly, Pernice dreamed up his termination-for-treatment theory only after the district court rejected his first, more plausible theory. We will not subject the City of Chicago to the expense of discovery on a theory that could likely be the subject of a successful Rule 11 motion./5

Because Pernice has pled himself out of court with the allegation that the City terminated him for violations of valid rules applicable to all employees, we affirm the district court's

dismissal of his second amended complaint.

/1 In addition, the ADA excludes from the definition of "qualified individual with a disability" any person currently using illegal drugs. 42 U.S.C. sec. 12114(a). This exclusion does not apply to people who no longer engage in the use of illegal drugs, or who have sought or completed treatment, however. 42 U.S.C. sec. 12114(b). Because the second amended complaint alleges that, at the time of his discharge, Pernice had ceased using drugs and entered treatment, he is not automatically excluded from the status of "qualified individual with a disability." Whether drug addiction constitutes a "disability" within the meaning of the ADA is a separate question, which we leave for another day.

/2 Only the Second Circuit has departed from this rule. In Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 516-17 (2d Cir. 1991), the court reversed summary judgment for an employer which fired an alcoholic employee for excessive absenteeism. If a sufficient percentage of the absences were caused by the employee's alcoholism, the court held, he could prevail in his Rehabilitation Act claim. Id. Although resort to authority interpreting the Rehabilitation Act is appropriate in interpreting the ADA, Collings, 63 F.3d at 832 n.3, we decline to follow Teahan as inconsistent with the great weight of authority.

/3 Two of our sister circuits have criticized Despears, both reading that case as affirming summary judgment for the employer because the plaintiff's alcoholism was a partial cause, but not the sole cause, of his demotion. See Baird ex rel. Baird v. Rose, 192 F.3d 462, 469 n.7 (4th Cir. 1999); McNely v. Ocala Star-Banner Corp., 99 F.3d 1068, 1077 (11th Cir. 1996). Such a reading of Despears puts it at odds with a host of decisions holding that the ADA prohibits employment discrimination if a covered disability is one motivating factor, even if not necessarily the sole cause, of the adverse employment action. But these cases misread Despears, which holds only that the plaintiff's alcoholism was a partial cause of his drunk driving incident, but that his drunk driving incident was the sole cause of his demotion. 63 F.3d at 636-37.

/4 His "allegedly" is misplaced: he was terminated. The complaint should read "He was terminated, allegedly for drug possession."

/5 The City also argues that the personnel board's ruling precludes Pernice from alleging any cause for his termination other than drug possession.

In University of Tennessee v. Elliott, 478 U.S. 788, 795-96 (1986), however, the Supreme Court held that a provision in Title VII directing the EEOC to give "substantial weight" to the findings of state administrative bodies, 42 U.S.C. sec. 2000e-5(b), indicated Congress' intent that common law issue preclusion not apply to the findings of such bodies. Because Title I of the ADA incorporates the same deferral procedures, 42 U.S.C. sec. 12117, Elliott's reasoning applies equally to ADA cases. Thomas v. Contoocook Valley Sch. Dist., 150 F.3d 31, 39 & n.5 (1st Cir. 1998). Pernice therefore was not bound by the personnel board's finding that he was discharged for drug possession.