# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 17, 2009      Decided February 5, 2010

No. 08-5494

RICHARD MILLER,
APPELLANT

v.

DEBORAH A. P. HERSMAN, CHAIRMAN,
NATIONAL TRANSPORTATION SAFETY BOARD,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01071-GK)

*David A. Young* argued the cause for the appellant. *Carl S. Nadler* was on brief.

*Brian P. Hudak*, Assistant United States Attorney, argued the cause for the appellee. *R. Craig Lawrence*, Assistant United States Attorney, was on brief.

Before: HENDERSON, ROGERS and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Richard Miller, a former employee of the National Transportation Safety Board (NTSB or Board), appeals the district court's judgment in his employment discrimination suit. *Miller v. Rosenker*, 578 F.

Supp. 2d 107 (D.D.C. 2008). Miller challenges the district court's decision insofar as it (1) granted summary judgment on Count I and Count II alleging discriminatory non-promotion on the ground that he failed to timely seek equal opportunity employment counseling from the Board and (2) dismissed Count III alleging discriminatory treatment on the ground Miller conceded arguments the Board raised in support of dismissal. Because genuine issues of material fact exist regarding Count I and Count II, we reverse the summary judgment on each. We also reverse the court's dismissal of Count III because Miller did not, as the district court concluded, concede arguments raised by the NTSB.

**I.**

Miller, who was born in 1949, began working at the NTSB in June 1999 as a financial management specialist in the NTSB's Office of Chief Financial Officer in Washington, D.C. His employment was terminated on June 30, 2006.

Miller initially filed a discrimination complaint with the NTSB's Equal Employment Opportunity (EEO) office on March 13, 2002, alleging the NTSB discriminated against him by (1) failing to select him for five different positions, (2) failing to provide a position description detailing the duties of his current position, (3) assigning him a lower performance evaluation than warranted and (4) denying him the use of office equipment and resources. The Board dismissed the complaint and the Equal Employment Opportunity Commission (EEOC) affirmed the dismissal in March 2006. Meanwhile, Miller filed a second EEO complaint on January 21, 2006, alleging additional instances of discrimination, retaliation and harassment.

Miller filed this action on June 9, 2006, asserting a single discrimination count based on his non-selection for the position of Budget Officer. When the NTSB failed to act on his second EEO complaint within 180 days, Miller filed an amended

complaint in the district court, alleging eight counts of sex and age discrimination or retaliation, including the three counts (Counts I, II and III) which are at issue in this appeal.

Count I alleges discriminatory non-selection for the Budget Officer position, which was awarded to a 50-year old female, Sylvia Livingston, on October 23, 2001. According to the complaint, Miller did not learn the selectee was a female until sometime in December 2001.

Count II alleges discriminatory non-selection for one of two "Special Assistant" vacancies, which were announced in early 2001. The two selectees, Barbara Czech and David Mayer (both then under 40 years of age), were initially appointed to fill the slots temporarily—from about March 3 to May 5, 2001—and were appointed permanently on April 30, 2001. The complaint alleges Miller first learned of their temporary selection on April 10, 2001 and of their permanent selection in May 2001.

Count III alleges the NTSB discriminatorily torpedoed his performance appraisal by failing to provide him in advance with an accurate job description (which "allowed [the appraiser] to evaluate his performance arbitrarily and discriminatorily," Am. Compl. ¶ 860), lowered his performance appraisal in retaliation for his "EEO activity," *id.* ¶ 85, transferred his duties to other employees and created a hostile work environment. *See id.* ¶¶ 78-87.

On February 27, 2007, the NTSB filed a Motion to Dismiss or, in the Alternative, for Summary Judgment (Motion to Dismiss), supported by a statement of facts not in dispute, a supporting memorandum and exhibits. *See* Motion to Dismiss, *Miller v. Rosenker*, C.A. No. 06-1071 (Feb. 27, 2007). Miller filed an Opposition to the Motion to Dismiss (Opposition), along with his own supporting memorandum and exhibits. *See* Opposition, *Miller v. Rosenker*, C.A. No. 06-1071 (Nov. 19, 2007).

On September 29, 2008, the district court granted summary judgment to the NTSB on Counts I and II on the ground that Miller cited no evidence to dispute material facts established by the NTSB's evidence, namely, that the date Miller sought EEO counseling was more than 45 days after he learned the positions had been awarded to other individuals, in violation of EEOC regulation 1614.105(a), 29 C.F.R. § 1614.105(a). *Miller*, 578 F. Supp. 2d at 113-14. The court dismissed the remaining six counts, including Count III, for failure to state a claim, concluding Miller failed to respond to arguments raised by the NTSB and thereby conceded them. *Id*. at 111-12. Miller filed a timely notice of appeal, challenging only the summary judgment on Counts I and II and the dismissal of Count III.

## II.

We review *de novo* both a summary judgment and a dismissal for failure to state a claim. *Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009) (citing *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007)). "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' " *Quigley v. Giblin*, 569 F.3d 449, 453 (D.C. Cir. 2009) (quoting Fed. R. Civ. P. 56(c)). In assessing whether a genuine issue exists, we "view the evidence in the light most favorable to the nonmoving party." *Id*. (citing *U.S. Postal Serv. v. Am. Postal Workers Union*, 553 F.3d 686, 692 (D.C. Cir. 2009)). We address first the two counts alleging discriminatory non-selection.

### A. Counts I and II

In its Motion to Dismiss, the NTSB asserted it was entitled to summary judgment on both Count I and Count II because Miller failed to exhaust his administrative remedies in that he did

not consult an EEO counselor within 45 days of the alleged discriminatory actions pursuant to EEOC regulation 1614.105. Regulation 1614.105 requires that an "[a]ggrieved person[] who believe[s he] ha[s] been discriminated against on the basis of . . . sex [or] age . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter" and "must initiate contact" with the counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a), (a)(1) (2001). Under subsection (a)(2), however, "the time will be tolled if he 'did not know and reasonably should not have [] known that the discriminatory matter or personnel action occurred.' " *Stewart v. Ashcroft*, 352 F.3d 422, 425 (D.C. Cir. 2003) (quoting 29 C.F.R. § 1614.105(a)(2)) (alteration in original). The NTSB has maintained that the 45-day period began to run for the Special Assistant positions no later than early May 2001, when Miller learned the identities of the two selectees, and for the Budget Officer position as of October 24, 2001, the date he was told he had not been selected for the post. Thus, the NTSB asserts, Miller failed to comply with the consultation requirement because each 45-day period expired before January 2, 2002, when he first sought counseling from NTSB EEO Director and Diversity Program Manager Fara Guest. *See* Decl. of Fara D. Guest, Motion to Dismiss ex. 1, ¶ 3 ("Richard Miller . . . first initiated contact with me and expressed the intention to begin the EEO counseling process no earlier than January 2, 2002.").[1] The

---

[1]Although Guest is not herself a counselor, the EEOC "has consistently held that a complainant satisfies the criterion of EEO counselor contact by contacting an agency official logically connected with the EEO process, even if that official is not an EEO counselor, and by exhibiting an intent to begin the EEO process." *Osuagwu v. Peake*, No. 0120081307, 2008 WL 2264405, at *1 (EEOC May 20, 2008) (citations omitted).

district court agreed with the Board as to both Count I and Count II and granted summary judgment on each. Addressing the two counts in order, we reverse the court's summary judgment on each.

With regard to Count I, the NTSB argued that, because it is undisputed that Miller learned on October 24, 2001 that he had not been selected for the Budget Officer position, his counseling request on January 2, 2002, which came more than 45 days thereafter, was necessarily tardy. *See* Motion to Dismiss Mem. at 8, *Miller v. Rosenker*, C.A. No. 06-1071 (Feb. 27, 2007) (Motion to Dismiss Memo.). We disagree. It is indeed undisputed that Miller was informed on October 24, 2001 that *he* had not been selected for the Budget Officer position. *See* Motion to Dismiss Memo. 7-8; *id*. ex. 5 (Oct. 25, 2001 email from Miller to NTSB Acting CFO Don Libera stating: "You seem to be saying in yesterday's meeting that you and Dave didn't think I had sufficient supervisory or managerial experience for the Budget Officer's job."); *id*. ex. 4 (Oct. 24, 2001 email to Miller from NTSB Human Resources Specialist Bernie Moffett offering to provide list of eligible candidates with all of the names redacted "except for the name of the person selected"). But this does not settle the matter. The complaint alleges that, although "a female was selected in October 2001" to fill the Budget Officer position, Miller "only discovered this fact in December 2001." Am. Compl. ¶ 18. Thus, Miller argues, it was only in December 2001—fewer than 45 days before his January 2, 2002 meeting with Guest—that he "reasonably should . . . have . . . known that the discriminatory matter . . . occurred," 29 C.F.R. § 1614.105(a)(2), that is, that he had been passed over on account of his sex, and that the period was therefore tolled until then. *See* Appellant's Br. 16-18; *cf. Johnson v. Runyon*, 47 F.3d 911, 921 (7th Cir. 1995) (45-day period did not commence until plaintiff learned allegedly discriminatory reason (hypertension) her employment

application was rejected).  The NTSB failed to rebut Miller's allegation on summary judgment.

"As the party moving for summary judgment, the [NTSB] bears the initial burden of identifying evidence that demonstrates the absence of any genuine issue of material fact."  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The Board did not carry its burden because it offered no evidence to resolve the disputed material issue of when Miller knew or reasonably should have known of the alleged discrimination. The Board cited no evidence demonstrating that Miller knew the identity of the selectee—or her gender—as of October 24, 2001 or even "[s]hortly thereafter," as it now claims, Appellee's Br. 5.  The only evidence the Board offers is the earlier described October 24, 2001 email to Miller from NTSB Human Resources Specialist Bernie Moffett, Motion to Dismiss ex. 4, at 1,  offering to forward the redacted eligible candidate list, as well as a copy of the list itself which, the Board asserts in its brief, Miller "produced in the administrative phase of this action."  *See* Appellee's Br. 5 (citing Motion to Dismiss ex. 6 (copy of redacted "Certificate of Eligibles" with attached post-it note bearing handwritten notation "Copy for Richard Miller")). Neither document, however, establishes with any precision the date on which the Board sent or Miller received his copy of the list—only that it was sometime between October 24, 2001 and the undisclosed date in 2002 when Miller produced the document during the administrative proceedings.  On the current record, then, he may well not have received it until December 2001 when, according to  the complaint, he was first aware of the successful candidate's gender.

Admittedly, to toll the 45-day limitation period under regulation 1614.105(a)(2), the plaintiff has a responsibility, when possible, to further investigate a personnel action in order to determine whether the action was discriminatory.  *See, e.g.*,

*Pacheco v. Rice*, 966 F.2d 904, 907 (5th Cir. 1992) (declining to apply tolling provision where Hispanic employee claimed he did not learn non-Hispanic employee was treated more favorably until three years after incident because "[t]he requirement of diligent inquiry imposes an affirmative duty on the potential plaintiff to proceed with a reasonable investigation in response to an adverse event"); *Caprio v. Peters*, C.A. No. 08-2555, 2009 WL 2893196, at *2 (3d Cir. Sept. 10, 2009) (no tolling where employee claimed he did not learn until three years after transfer it was discriminatorily motivated—when colleague informed him others similarly situated had not been transferred—noting plaintiff "d[id] not contend that defendant prevented his access to information regarding how other mobility-restricted employees were treated, or that such information was not reasonably discoverable"); *Silver v. Leavitt*, C.A. No. 05-0968, 2006 WL 626928, at *8 (D.D.C. Mar. 13, 2006) (tolling appropriate where "plaintiff had no way of knowing" date selectees were hired as such information was not made public and plaintiff was out of office for extended period of time); *Carroll v England*, 321 F. Supp. 2d 58, 66 (D.D.C. 2004) (no tolling where employee had "[c]onstructive knowledge" of discriminatory act); *Hill v. Runyon*, 959 F. Supp. 488, 491-92 (N.D. Ill. 1997). Presented with Moffett's October 24, 2001 offer to provide the name of the person selected for the position, Miller might well have been able, with little effort, to obtain the information he claims was necessary to begin the 45-day period shortly thereafter. Nonetheless, it is the defendant's burden to show the plaintiff did not timely contact an EEO counselor, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), and the NTSB has offered scant evidence regarding when Miller first initiated contact with Ms. Guest. *See* Decl. of Fara D. Guest, Mot to Dismiss Ex. 1, ¶ 7 (stating she "d[id] not recall the exact date that Mr. Miller contacted [her] and expressed the intention to begin the EEO counseling process"). Because the

NTSB failed to carry its burden, the district court erred in granting summary judgment to the Board on Count I.

The court also erred in granting summary judgment on Count II—alleging discriminatory non-selection for the Special Assistant positions. Because Miller's complaint acknowledges that he learned the identity of the two successful Special Assistant candidates in April and May 2001, the Board again asserts his failure to seek counseling before January 2002 violated regulation 1614.105(a)(2). Miller's sworn declaration, however, states that he "first contacted Ms. Guest about [his] first complaint . . . after learning [he] had not been selected for the CFO position,"—which he is "confident was in early April"—and that he "continued to contact Ms. Guest on further non-selections" and "continued to push Ms. Guest to move forward" until "[i]n November, she finally agreed to request a counselor." Decl. of Richard L. Miller ¶¶ 13, 15 (attached to Opposition) (Miller Decl.). Viewed in the light most favorable to Miller, *Quigley*, *supra*, this evidence supports Miller's claim that he first presented his discrimination claim to Guest in Spring 2001 and sought to move forward on it but that Guest did not contact a counselor until November 2001. Guest's statements notwithstanding, summary judgment was therefore inappropriate. *See Arrington v. United States*, 473 F.3d 329, 337 (D.C. Cir. 2006) ("[A] plaintiff may defeat a summary judgment granted to a defendant if the parties' sworn statements are materially different.").

### B. Count III

Count III of Miller's complaint alleges the NTSB discriminated against him when it failed to provide an accurate job description in advance of his performance appraisal (thereby allowing the appraisal to be performed "arbitrarily and discriminatorily"), lowered his evaluation in retaliation for his "EEO activity," transferred many of his duties to younger and/or female employees (replacing his duties with "functions

previously performed by lower graded employees") and generally created a hostile work environment.  *See* Am. Compl. ¶¶ 78-87.  The district court dismissed Count III on the ground that Miller failed to respond to—and therefore conceded—two arguments the NTSB raised in opposition to the count, namely, that Miller (1) "fail[ed] to timely exhaust his administrative remedies for Count[] III" and (2) "raised claims already pending before th[e] Court in a separate action."  578 F. Supp. 2d at 111-12.  We conclude that Miller conceded neither argument.

As to the first argument, NTSB did not assert in its Motion to Dismiss that Miller had failed to exhaust his administrative remedies for the sex and age discrimination claims in Count III—only for the hostile work environment claim and, perhaps, the retaliation claim therein (neither of which he presses on appeal, *see* Appellant's Br. 4 n.2, 32 n.10).  *See* Motion to Dismiss Memo. 10.  The second referenced argument—the identity of issues in Miller's two district court actions—Miller did directly address in his Opposition.  *See* Miller Decl. ¶ 45.  That Miller's legal position may not have been meritorious, as the NTSB contends, does not alter the fact that he did indeed respond to the Board's parallel case argument and therefore did not concede it.[2]

For the foregoing reasons, we reverse the district court's summary judgment on Count I and Count II and its dismissal of Count III.  Accordingly, we remand for further proceedings consistent with this opinion.

*So ordered*.

---

[2]In any event, the parallel action—*Miller v. Rosenker*, C.A. No. 05-2478—had been dismissed on July 25, 2008 and a motion for reconsideration of the dismissal denied on September 4, 2008, more than three weeks before the district court's decision in this case.